Good morning, your honors, and may it please the court. My name is Mark Ebert, and I represent Mr. Stroud. And I would like to save two or three minutes of my time for rebuttal. Your honors, this is a case that should concern every criminal lawyer and the bench because it impacts not only the confidentiality of attorney-client communications with prisoners, but also the ability of prisoners to get legal help and to have access to the courts. Yes, counsel? As I understand it, the law is quite clear that a prisoner is entitled to communicate confidentially with his lawyers. I agree, your honor. And the law is quite clear that the prison has an obligation to set up a procedure so that that can be accomplished. Yes. And it also seems quite clear to me on the facts that the prison in this case did set up a procedure by which that could be accomplished. What they would do is they'd open the letter to see if there was something in it other than a communication, hold it up, go like that to get contraband out of it if there was a hacksaw blade or something like that. Hold it up upside down to make sure it's not read. But not read it, and there'd be a witness. And they did all that, and the only reason this fellow's letter that turned out actually not to be a communication counsel, it was a kite to suborn perjury, but we don't even get to that. You don't look afterwards to decide if the search was okay before. But he didn't follow the prison procedure for private communication with a lawyer. I wonder if it isn't like where there are other cases where a prisoner can have a confidential communication, he doesn't follow the procedure, so it's not confidential. For example, I used to go to jail to interview clients who were there, and they'd give us a room with no recorder, no microphone, so I could talk to my client in the little cinder block conference room. Well, if my client was enough of an idiot to start blurting out stuff to me in the hall before we got to the room, he wasn't going to be able to suppress it. I wasn't going to be able to suppress it for him because it was an attorney-client communication. He had to follow the procedure, wait until we get in the little cinder block room. Why isn't this guy just like that? Two reasons, Your Honor. The first is the question is the validity of the procedure under a clearly established Supreme Court precedent, and here I'm referring to Thornburg v. Abbott and Procunier v. Martinez. And that clearly establishes the right of prison inmates to communicate with people outside the prison through correspondence, and it also sets up a very strict test for any regulations that restrict outgoing prison mail. Which case now? That's Procunier v. Martinez and Thornburg v. Abbott, two Supreme Court cases. And the standard is different and much stricter for regulations that inhibit or restrict outgoing prison mail. They have to be reasonably related to an important or substantial governmental interest, which is specifically defined as prison security order and rehabilitation, and it also has to be no greater than is essential to protect those interests. Why doesn't this satisfy that? Because, Your Honor, and just one more point is that legal mail, as you pointed out, can be inspected for physical contraband, but it cannot be read, and the Supreme Court established that in Wool. Well, the regulation here seems very simple and straightforward. It requires essentially that it be addressed to a lawyer, that it contain a complete return address so they know who it's from. So far, so good. I assume that's still reasonable in your view. And the third requirement is that the word confidential must appear on the envelope or it will be treated as regular mail. Those are pretty straightforward, and they enable, presumably, the staff to determine quickly which things should be processed as legal mail and which shouldn't. So on its face, what's wrong with this regulation? A couple of things, Your Honor. One is that legal mail and confidential mail legally are synonymous. Both the California Penal Code, the California Code of Regulations, and California case law, specifically People v. Poe, make it clear that all legal mail is confidential mail. Well, but what you're doing is really arguing, I think, as applied. You're saying they should have treated. I'm looking. You make two challenges. I have difficulty with your facial challenge because just looking at this, it's simple. You've got to say who's sending it, who's receiving it, and that it's confidential, using the word confidential. And you're done. It's easy. It's straightforward. And so the question really is, as applied, was it unreasonable for the state court to conclude that the phrase legal mail wasn't sufficient? First of all, I agree that I'm making a two-step argument, one on its face and second as applied. And I would point out in response to your question, which goes to my second argument, that the trial court found, number one, that Mr. Stroud did have a subjective expectation that his legal mail addressed to an attorney at law with legal mail underlined, that it was confidential and would not be read. And the trial court also found and said that he believed that anybody who writes legal mail would expect that it would be confidential. Counsel, that's not really our issue here, it seems to me. The question is, we're looking at the California Court of Appeals decision, and we have to decide whether it's an unreasonable application of procunier, or however that's pronounced, in Thornburg, to conclude that the word confidential really had to be there. And so really what we're examining isn't the district court so much as it is the California courts. And so they said you had to comply with the regulation. Again, it's a little difficult because there are two separate issues that Your Honor is getting at. As to the first issue, constitutionality on its face, I would reply that this requirement does not meet the test set forth in Abbott and Procunior v. Martinez. There is nothing related to internal prison security that requires you to use any particular set of words, any particular mantra to effectuate your right to confidential communication. We use magic words in a lot of contexts, like in deeds. And here the magic words are so that the prison guards know what mail should be read and what mail should be treated with the confidential legal communication procedure. And my gosh, asking a guard to do interpretive work depends on the intelligence and judgment of the guard. I don't know if they have to depend on the intelligence and judgment of the guard. Why not just keep it simple? It has to be exactly like this. I think it is simple, Your Honor. Number one, I don't think it takes a lot of intelligence and judgments on the part of the guard to see that if it's addressed to so-and-so attorney at law, you write legal mail and you underline it, that that's legal mail. Number two, using the specific mantra that they set out, which has no relationship to prison security, depends on the intelligence and judgment of inmates. And I have a lot of clients who are inmates, and Your Honors deal with a lot of inmate cases. And as the Supreme Court pointed out in Wolf, those inmates are often people who are illiterate, who have little education, they have mental health problems, they are often medicated. So what you're saying is, to be fair to the inmates, you have to ask that the guards be people who can exercise intelligence and judgment. What I'm saying is that in this case, it was absolutely clear. It was not really an issue as to whether it was legal mail. It said legal mail. It was not an issue as to whether it was to an attorney. It said it was to an attorney. It's all clear on its face. And to require more of the inmate is basically a trap for the unwary. If one of Your Honors or I were in prison, we would have no problem following that rule. But people like us are not the people who are in prison. And if you're going to establish these really arbitrary requirements that you say it three different ways, even though legally these words are defined as synonyms, and even though you have a legal right to have confidential mail to your attorney, then this is a trap for the unwary, and it's something that simply doesn't make sense. I'm sorry? This particular letter that was the exhibit in this case, the question was suppressing. Was that in an envelope furnished by the prison that had a printed form envelope, printed legal mail? I do not believe it was. My memory... When I was a district judge, I used to get a lot of letters from prisoners. Some of them were death threats and other pleasantries. And a lot of them came in letters that were printed on the form of the envelope, printed by the prison or by somebody, legal mail. The prisoner would just ask for a legal mail envelope, and they'd give it to him, and he could use it for anything he wanted. It was handwritten, and I am not aware of anything in the record nor outside the record to tell us whether or not this particular prison has. Is the envelope even in the record? Yes, it is, Your Honor. It's in my excerpts of record. No, wait a minute. No, the letter itself was not in the record. It was read aloud word for word. The envelope. I don't recall if the envelope was in the record. It was in one of your papers. Okay. I wanted to look at it, too, and I don't have it sticky because I couldn't find it. I'm sorry. I don't know that I have it with me. Well, if counsel would cooperate after the hearing, it appears that we somehow missed it, that it was properly in the record somewhere, but we missed it. If it was, in fact, in the record and we just missed it somehow, would counsel please supply a copy to the court? Absolutely. But I would say, and I will definitely do that, but I will say that. If it's in the excerpts, tell us the excerpts page. I will do that as soon as I find it. But I will say that the trial court did make a record that that's what it says. Oh, wait. I did put a blue sticky on it. Okay. What's our page number? ER20. Okay. Okay. It's there. I did put a blue sticky on it. Sorry. All right. Thank you. What it says is legal mail and handwriting up near the stamps. Right. But it doesn't say confidential. Right. And it says to so-and-so attorney of law. That was his brother, was it? His uncle, I believe. Thank you, counsel. And the firm was handling his appeal. We'll hear from the state. Good morning. May it please the court, Kelly Johnson, Deputy Attorney General on behalf of Appellee. Counsel, let me just tell you what worries me about this particular case. I have no difficulty with, just speaking for myself, with the regulation on its face, but I'm concerned about its application here. The regulation says the word confidential must appear on the face of the envelope. And, you know, what if you had a really bad speller who spelled it instead of T-I-A-L, spelled, you know, S-H-U-L at the end? Would that be reasonable to say, well, that's not the word confidential as it appears in the regulation. And so the prisoner is out of luck. It's regular mail? I do not think that that would be processed as regular mail under that situation. Although the regulation just says that it has to say confidential, and it does have it in quotes that it's true. So I guess, is it a reasonable application of the Supreme Court's cautions about the opportunity of an inmate to send a confidential communication to his lawyer to say we're going to apply this absolutely strictly. So if you make a typo, if it says C-N-O instead of C-O-N, or you can't spell it, but if you sound it out, you know it's the word confidential, you're stuck. Would that be reasonable? No, and I don't think that the – I think in combination, if a guard were to receive a letter that said the hat was addressed to an attorney and also had a misspelled word confidential on it, that that would comply enough so that the guard would assume it was legal mail. Well, what bothers me is that I'm not sure how far this case is from that example. You have – all the other requirements are met. You have the inmate's full information. You have it to a lawyer who is actually a lawyer, and in fact is at least related to people who are actually representing this person, and it says legal mail. Why isn't that similar to my misspelling example? Why is it reasonable for the state court to say, well, it didn't say the word confidential, and that's all we have to think about? Well, I believe it was Justice Kleinfeld pointed out earlier that it's not fair to leave so much discretion with the judges – I'm sorry, with the officers, the correctional officers. They should be able to look at it and simply determine whether it complies with the regulations or not. And also, because the inmates are given a copy – So if it said in giant letters, this is legal mail regarding my appeal and it's private, please don't read it, that still wouldn't do it because it doesn't contain the word confidential. Correct. And because they are – Why is that reasonable? Well, because they are – going back to your first question about the misspelling of confidential, the inmates do have that regulation with them, and Stroud here testified that he did have that, he just didn't read it. So there really shouldn't – if they look at that regulation in order to comply with it, the word confidential is right there in their rules. But you're dealing with a First and Sixth Amendment right, according to the Supreme Court, to communicate with your lawyer without having the prison officials read the contents of the words. And I guess I just have some difficulty with the reasonableness of interpreting an otherwise okay regulation in such a rigid and draconian manner that something that any reasonable reader would see was intended for that proper purpose. It doesn't turn out to be, but you don't get there if you're not allowed to read what's in the envelope. Correct. That's absolutely true. Substantial compliance with the regulations is not enough, like in this case where he wants to say that writing legal mail and having an address to an attorney should be enough? Well, I know that's your position, but I just don't – I guess what I'm looking for is some reason why that is reasonable. Well, and it's not unreasonable to require something so simple as to write the word confidential. It kind of reminds me of a senatorial election we just had in Alaska. Once we get down to the spellings, trying to figure out the intent of the voters. It's work asking. Right. Was there any – we had the exact same argument. And here, let me point out that there – Was there any testimony here by the prison guards, not about the policy in general, but about why they opened this envelope? Well – I didn't read it all. Is there somebody who says, I opened it because it didn't say confidential or I didn't notice or anything? Well, unfortunately, the apparent officer who actually took the letter from Stroud and then somehow it landed in the mailbox. The officer who processed it into the – opened the letter. Correct, and that was Rosa's. But we do not know the name of the guard who Stroud apparently gave the letter to, and so we don't know – and we don't know that it was even, in fact, closed at that point. You said Rosa is the guard who put it in the wrong box? No, I'm sorry. Rosa's – it was in Rosa's box. So he's the one who read it, already opened, by the way, at that point. So it was in Rosa's box, already opened? Opened, correct. But it had not been read before it got in Rosa's box? That's not clear from the record, unfortunately. So did Rosa testify? He testified, yes. And what did he say – where is it and what did he say? He testified at the motion – at the hearing on the motion for reconsideration, and that starts at excerpts of record, page 76, I believe, in my excerpts. And he – that's not his exact testimony, I'm sorry. He testified that when he received the letter in his box, and again, he said, I do not know exactly how it was – how it ended up there. ER 76 is in it. Oh, okay, I'm sorry. He did testify that when he received the letter in his box, it was not open. And at that point – I'd just love to look at it with you, Wanda. Sorry, let me find it before I continue speaking. He called to testify on page ER 90. Okay, thank you. So it has to be after that. Yes. Yes, and here, on page ER 95. Thanks. He's talking about that this letter was not sealed when he found it in his box. And there's some discrepancy as to what he means by sealed. He said it was not closed as if, like, the glue that normally holds an envelope closed was not affixed. So it was not glued shut just by the normal envelope seal. It also was not properly sealed per prison procedures because it did not have scotch tape over the envelope's original seal with an officer's initials on it to indicate that he had, in fact, read it and sealed it to be processed as legal. I'm sorry. What's interesting to me about that is he says it wasn't sealed to read, quote, legal confidential mail, end quote. So apparently he views, at least inserting the word confidential, as legal confidential mail is entitled to this protection, according to him, that it's just the absence of the one word that meant that he wasn't going to treat it that way. Well, that statement that you just read was when they were trying to decide whether he was talking about whether it was closed or properly sealed. And I think Rosa's statement there was it was not sealed to read legal confidential mail, meaning it wasn't sealed to comply with the confidential requirements. It looks like that's all in the context of the line of questions that begins. If we look at the glue portion, it looks like part of it was licked and sealed. Correct. And he's saying, well, they didn't accomplish the seal very well. But what I really want to know is why did he read the letter if it said legal mail and it was addressed to attorneys? Rosa's? Why did Rosa's? Yeah. Well, he read it because it had been placed in his box, which is where. Where's his answer to that question? Somebody must ask him. Okay. That is. Probably indirect. He says, on page ER 92, at the very bottom, the last paragraph there, he says, he's assigned to the investigative services unit. And when correctional officers come across mail or contraband, they put it to ISU, and they put it in a drop box. And then Rosa's testifies on the very next page, that's the way he found the letter in the envelope, and it was not sealed. And there, they say, was the letter properly sealed for purposes of it being legal confidential mail being sent out without you being able to read it? And he says, no, because it was based on the way that the letter was in the envelope, but not sealed and not signed by an officer with the scotch tape. It didn't comply. And so, therefore, he, at that point, was able to read it legally. Why didn't he make any inquiries if something says legal mail? Well, again, he's not the officer who took it from Stroud at the cell. And, you know, we have no evidence in the record to show that a guard actually picked up the letter from Stroud. Well, how did it get there? It could have been found on the floor by anybody in the prison. I mean, this is not in the record. Is there testimony it was found on the floor by somebody in the prison? No, but there's also no testimony from any officers. Ordinarily, you draw reasonable inferences. I mean, maybe the tooth fairy delivered it, but that's not very likely. The likely thing is he gave it to a guard. But then why was there no notation on the envelope at all from a guard? That's what we're trying to find out. And in finding that out, I guess what we're still concerned about is why it wasn't processed as if something would have been, had it also said confidential on it. Right, and because it didn't say confidential, it could be processed as regular mail, or it could be inspected by the authorities for further contraband, which is what happened here. They decided not to process it. Does the reg say that the flap has to be scotch tape shut in the presence of a guard? The sections that were at issue here, 3142, does not say anything about scotch tape. The way it looked to me from this testimony is, so it was mail that had been, the flap had been licked, it had been sealed, but it wasn't a total sealing job. So Rosas opened it, which was easy to do because only part of the glue was sticking, and read the mail. He did not testify that he opened it at all. He said it was not closed. So maybe at some point it looked like. It was a little ambiguous. It sounded kind of like he was saying it wasn't properly and fully glued shut. When he was talking about the proper seal, he was talking about because it didn't have the guard's initials and tape on it. But when he was talking about the glue, he was saying, yes, it does look like at some point someone licked it and tried to make the glue stick, which Stroud could have done because Stroud testified that he had closed it, but then he opened it so that he could show it to the guard. He says it was improperly sealed. It may have already been opened. Yes. I'm still looking for the next question. Okay. It was improperly sealed. It may have already been opened. It may not have been. Regardless, why didn't you look and see that it said legal mail and was addressed to lawyers and treated as legal mail? Was that question asked? Yes. And the answer was because it did not say confidential. Where did they ask that to Rosas? Right there. He's saying it was not. What page are you on? I am on page 92 and 93. I'm sorry, let's look at 93. ER 93, the last question there. Based on the way that letter was in the envelope, not sealed and not signed by an officer, would you consider that to be legal confidential mail? And Rosas' answer is no. Oh, I thought that was a question about the regulations, not about his judgment, what he did. But you're saying that was he wasn't just talking here about the regulations, he's saying that's why he opened it? Yes, I believe so. Because right above that, the second question on the top of that page was, was that letter properly sealed for purposes of it being legal confidential mail for being sent out without you being able to read it? And he says no. I thought he was just asking for his judgment, but thanks. Okay, sorry. Thank you, counsel. We've asked you a lot of questions. We appreciate your time. Thank you very much. Oh, sure. Do I have time for one more? You may have a minute for one more. You may even have more than that left, I don't recall. I don't remember. I'll be as quick as I can. Without spending time leafing through here, which I would love to do, but I don't think I have the time, my understanding from reading the testimony was that some anonymous person put this in the investigator's box, Investigator Rose's. Nobody knows who. It could have been some other inmate trying to set up Mr. Stroud, as his attorney argued at trial, or it could have been a prison guard. We don't know who. But my understanding is that the flap had been licked and glued shut. It was then opened by someone before it was stuck in Mr. Rose's box. So it was sealed. It was opened. If you assume that it was a prison guard, we don't know why. We don't know what that guard thought. All we know is that it said, legal mail, it said it was addressed to an attorney. It was sealed shut in the ordinary sense of the term, and it was opened by a person unknown. And also, in order to get to that box, it had to have been read. There was no other reason to put it in the investigator's box, unless whoever read it determined that it was contraband or that it was illegal or something like that. Finally, I just wanted to point out in response to Judge Graber's questions, I think that the constitutional right is not a constitutional right to have mail that is marked confidential, not read by prison officials. The constitutional right in Procunior, Martinez, Wolf, and Abbott is to have legal mail treated as confidential. And this regulation doesn't do that on its face, and it didn't do that as applied to Mr. Stroud. It didn't accomplish that. Thank you, counsel. We appreciate the arguments of both of you in this very challenging case. You were both very helpful, and we appreciate it. The case is submitted.
judges: Goodwin, Kleinfeld, Graber